[No. S157001. Apr. 20, 2009.]

PAULINE FAIRBANKS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
FARMERS NEW WORLD LIFE INSURANCE CO. et al., Real Parties in
Interest.

58

**COUNSEL**

Law Office of Robert S. Gerstein, Robert S. Gerstein; Marks Law Firm, Scott A. Marks; Sheller Law Firm, David L. Sheller; Girardi Keese and John A. Girardi for Petitioners.

Amy Bach; Law Offices of Kim E. Card and Kim E. Card for United Policyholders as Amicus Curiae on behalf of Petitioners.

Stuart Law Firm, Antony E. Stuart and E. Glenn Anaiscourt for Consumer Attorneys of California as Amicus Curiae on behalf of Petitioners.

Harvey Rosenfield, Pamela Pressley and Todd M. Foreman for Consumer Watchdog as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Fulbright & Jaworski, Richard R. Mainland, Peter H. Mason, Joshua D. Lichtman and Eric A. Herzog for Real Parties in Interest.

Horvitz & Levy, Mitchell C. Tilner and Robert H. Wright for American Council of Life Insurers, American Insurance Association, Association of California Insurance Companies, Association of California Life and Health Insurance Companies, Pacific Association of Domestic Insurance Companies and Personal Insurance Federation of California as Amici Curiae on behalf of Real Parties in Interest.

---

**OPINION**

**KENNARD, J.**—Enacted in 1970, the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) prohibits specified unfair and deceptive acts and practices in a "transaction intended to result or which results in the sale or lease of goods or services to any consumer" (*id.*, § 1770, subd. (a)). The question we decide here is whether life insurance is a "service" subject to the act's remedial provisions. We conclude that it is not. As this is consistent with the Court of Appeal's decision, we affirm its judgment.

## I

In November 2003, plaintiff Pauline Fairbanks filed a complaint in superior court, on behalf of herself and all others similarly situated, naming as defendants both Farmers Group, Inc., and Farmers New World Life Insurance Company (collectively, Farmers). Michael Cobb was named as an additional plaintiff in the third amended complaint, which is the pleading at issue here.

Plaintiffs Fairbanks and Cobb have alleged that they are California residents who have purchased Farmers's policies of universal life insurance and flexible premium universal life insurance. Fairbanks is a Farmers agent; Cobb, apparently, is not. Plaintiffs sought to bring this action as a class action on behalf of all persons who purchased similar Farmers policies between November 3, 1984, and December 31, 1996.

Plaintiffs have alleged that Farmers engaged in various deceptive and unfair practices in the marketing and administration of its universal life insurance and flexible premium universal life insurance policies. Among the causes of action that plaintiffs alleged was a claim for violation of the Consumers Legal Remedies Act. As to that claim, the trial court granted Farmers's motion for judgment on the pleadings. The trial court concluded that the Consumers Legal Remedies Act did not apply because the life insurance policies that Farmers issued to plaintiffs were neither "goods" nor "services" as defined in that act.

Plaintiffs sought review of the trial court's ruling by petitioning the Court of Appeal for a writ of mandate. After issuing an order to show cause, the Court of Appeal denied the petition. Like the trial court, the Court of Appeal concluded that life insurance is not subject to the protections of the Consumers Legal Remedies Act. We granted plaintiffs' petition for review.[1]

## II

In *Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362, 376 [149 Cal.Rptr. 360, 584 P.2d 497], this court remarked that "insurance is technically neither a 'good' nor a 'service' within the meaning of the [Consumers Legal Remedies Act]." Because the issue was not presented there, that statement was dictum. Nevertheless, federal district courts have relied upon it in concluding that annuities, which are included within the Insurance Code's definition of life insurance (Ins. Code, § 101), are neither goods nor services the sale of which is subject to regulation under the Consumers Legal Remedies Act. (*Estate of Migliaccio* (C.D.Cal. 2006) 436 F.Supp.2d 1095, 1108–1109; *Bacon ex rel. Moroney v. American Intern. Group* (N.D.Cal. 2006) 64 Fed. Rules Serv.3d 142.)

The Consumers Legal Remedies Act defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not

---

[1] Although the parties have framed the issue as whether insurance in general is a service for purposes of the Consumers Legal Remedies Act, and although both the trial court and the Court of Appeal took that broad view of the issue, we have narrowed the issue to focus only on life insurance.

severable from the real property." (Civ. Code, § 1761, subd. (a).) It defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." (*Id.*, § 1761, subd. (b).)

■ Life insurance is a contract of indemnity under which, in exchange for the payment of premiums, the insurer promises to pay a sum of money to the designated beneficiary upon the death of the named insured. (*Estate of Barr* (1951) 104 Cal.App.2d 506, 508 [231 P.2d 876]; see Ins. Code, §§ 22, 101.) Because life insurance is not a "tangible chattel," it is not a "good" as that term is defined in the Consumers Legal Remedies Act. (Civ. Code, § 1761, subd. (a).) Neither is life insurance a "service" under the act. An insurer's contractual obligation to pay money under a life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible chattel. Accordingly, we agree with the Court of Appeal that the life insurance policies at issue here are not services as defined in the Consumers Legal Remedies Act.

Because the statutory language is unambiguous, there is no need to consider legislative history (*People v. Castenada* (2000) 23 Cal.4th 743, 747 [97 Cal.Rptr.2d 906, 3 P.3d 278]), and we do so only from an abundance of caution. The legislative history of the Consumers Legal Remedies Act confirms our conclusion that it does not apply to life insurance. The California Legislature adapted this act largely from a model law, the National Consumer Act, proposed by the National Consumer Law Center at Boston College. (Assem. Com. on Judiciary, analysis of Assem. Bill No. 292 (1970 Reg. Sess.) Apr. 20, 1970, p. 1; see Reed, *Legislating for the Consumer: An Insider's Analysis of the Consumers Legal Remedies Act* (1971) 2 Pacific L.J. 1, 11.) The model law expressly applied to insurance because it defined "services" as including "(a) work, labor, and other personal services, [¶] (b) privileges with respect to transportation, hotel and restaurant accommodations, education, entertainment, recreation, physical culture, hospital accommodations, funerals, cemetery accommodations, and the like, and [¶] (c) *insurance*." (National Consumer Act (Nat. Consumer L. Center 1970) § 1.301, subd. (37), pp. 23–24, italics added.) Our Legislature omitted the reference to insurance in the definition of "services," however, thereby indicating its intent *not* to treat all insurance as a service under the Consumers Legal Remedies Act. (See *Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 268 [15 Cal.Rptr.3d 244] [when a statute is modeled on a uniform act, deviation from the uniform act's language is presumed to be deliberate and to reflect a different intent]; *Berry v.*

*American Express Publishing, Inc.* (2007) 147 Cal.App.4th 224, 230–231 [54 Cal.Rptr.3d 91] [deleting a specific provision from a proposed law generally reflects an intent that the law not be construed to include the omitted provision]; *San Bernardino Valley Audubon Society v. City of Moreno Valley* (1996) 44 Cal.App.4th 593, 604 [51 Cal.Rptr.2d 897] [same].)

◼    This intent is further confirmed by comparing the Consumers Legal Remedies Act's definition of "services" with the definition of the same word in the Unruh Act (Civ. Code, § 1801 et seq.). In 1970, when the Legislature was in the process of drafting and enacting the Consumers Legal Remedies Act, the Unruh Act defined "services" this way: " 'Services' means work, labor and services, for other than a commercial or business use, including services furnished in connection with the sale or repair of goods as defined in Section 1802.1 or furnished in connection with the repair of motor vehicles . . . or in connection with the improvement of real property *or the providing of insurance . . . .*" (Civ. Code, § 1802.2, added by Stats. 1959, ch. 201, § 1, pp. 2092–2093, italics added.) We presume the Legislature was aware of this Unruh Act definition when it set about defining the same word in the Consumers Legal Remedies Act, and the language of the two definitions is similar in many respects, but the express reference to insurance in the Unruh Act definition is conspicuously absent from the definition in the Consumers Legal Remedies Act. The use of differing language in otherwise parallel provisions supports an inference that a difference in meaning was intended. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 896 [80 Cal.Rptr.3d 690, 188 P.3d 629].) Even under the quoted Unruh Act definition of services, moreover, insurance itself is not specifically included, but only "services furnished . . . in connection with . . . the providing of insurance." (Civ. Code, § 1802.2.) Thus, the Unruh Act definition of "services" provides additional evidence that the Legislature did not consider insurance itself to be a service for purposes of consumer protection legislation.

The legislative history that has been brought to our attention does not explain why the Legislature omitted an express reference to insurance from the definition of "services" in the Consumers Legal Remedies Act. We do know, however, that the act's final wording "was the product of intense negotiations between consumer and business groups, and represented a compromise between the two." (*Berry v. American Express Publishing, Inc., supra,* 147 Cal.App.4th at p. 230, citing Reed, *Legislating for the Consumer: An Insider's Analysis of the Consumers Legal Remedies Act, supra,* 2 Pacific L.J. 1, 8.) The omission or exclusion of insurance from the definition of "services" may have been one element of the compromise. It is also possible that the Legislature was influenced by the existence of a separate legislative scheme, the Unfair Trade Practices Act (Ins. Code, § 790 et seq.; see *id.,* § 1620.2), for deterring unfair and deceptive practices in the insurance

industry. (See generally *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58].)

■ Plaintiffs do not here argue that life insurance policies are goods within the meaning of the Consumers Legal Remedies Act. They do contend, however, that life insurance is a service under that law. In support of that contention, they rely first on a broad dictionary definition of "service" as including a "benefit" and a "contribution to the welfare of others." (Merriam-Webster OnLine Dict. <http://www.merriam-webster.com/dictionary/service> [as of Apr. 20, 2009].) Insurance, or the providing of insurance, may well be a service within the meaning of these broad dictionary definitions. (See, e.g., *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 54 [86 Cal.Rptr.2d 855, 980 P.2d 407] [referring to insurance as a " 'quasi-public' service"]; *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 820 [169 Cal.Rptr. 691, 620 P.2d 141] [quoting a commentator's characterization of insurance as " 'a vital service' "].) When the Legislature has provided a statutory definition for a term, however, courts must apply that definition when interpreting the statute rather than general dictionary definitions. (*Bernard v. Foley* (2006) 39 Cal.4th 794, 808 [47 Cal.Rptr.3d 248, 139 P.3d 1196].) As we have concluded, life insurance does not fit within the statutory definition of "services."

Next, plaintiffs rely on decisions from other jurisdictions holding that insurance comes within the meaning of "service" as defined in similar consumer protection statutes. As the Court of Appeal pointed out, however, the statutes in those other states are differently worded and have broader applications than the Consumers Legal Remedies Act. For example, plaintiffs rely on *McCrann v. Klaneckey* (Tex.Ct.App. 1984) 667 S.W.2d 924, which concluded that insurance is a service under Texas's Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann. § 17.50). Plaintiffs point out that the Texas statute defines "services" as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods" (Tex. Bus. & Com. Code Ann. § 17.45, subd. (2)), a definition almost identical to the definition of "services" in the Consumers Legal Remedies Act. But plaintiffs fail to note that *McCrann* relied on the earlier decision in *Dairyland County Mut. Ins. Co. v. Harrison* (Tex.Civ.App. 1979) 578 S.W.2d 186, which in turn relied on another provision of Texas's Deceptive Trade Practices Act, which "provide[d] for the maintenance of an action by one who has been adversely affected by 'the use or employment by any person of an act or practice in violation of Article 21.21, Texas Insurance Code . . . .' " (*Dairyland County Mut. Ins. Co. v. Harrison, supra*, at p. 190.) It was this express incorporation of statutes regulating insurance that persuaded the Texas appellate court that the Texas consumer protection law applied to insurance. (*Ibid.*) California's Consumers Legal Remedies Act has

no similar provision expressly incorporating laws regulating insurance, and thus the Texas courts' decisions provide no persuasive support for plaintiffs' argument here.

Likewise distinguishable is the Colorado Supreme Court's decision in *Showpiece Homes Corp. v. Assurance* (Colo. 2001) 38 P.3d 47, holding that insurance was subject to regulation under the Colorado Consumer Protection Act. In reaching that conclusion, the Colorado high court noted that the Colorado law regulated goods, services, and property, that it did not define "goods" or "services," and that it contained a definition of "property" that included "intangible property." (*Showpiece Homes Corp. v. Assurance, supra,* at p. 57.) The Colorado high court concluded that insurance was subject to regulation under the Colorado law either as intangible property or as services under a broad dictionary definition of that term. (*Id.* at pp. 57–58.) California's Consumers Legal Remedies Act is unlike the Colorado law because it does not apply to intangible property or goods, and because it contains a restrictive definition of "services" that excludes life insurance. For this reason, the Colorado decision provides no persuasive authority for plaintiffs' contention here.

■ Plaintiffs point out that in *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282 [119 Cal.Rptr.2d 190], the Court of Appeal evidently assumed that the Consumers Legal Remedies Act applies to life insurance. The case is of no assistance to plaintiffs, however, because a judicial decision is not authority for a point that was not actually raised and resolved. (*Miklosy v. Regents of University of California, supra,* 44 Cal.4th at p. 900, fn. 7; *People v. Knoller* (2007) 41 Cal.4th 139, 154–155 [59 Cal.Rptr.3d 157, 158 P.3d 731].)

■ Next, plaintiffs rely on Civil Code section 1760, which states that the provisions of the Consumers Legal Remedies Act "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." ■ A liberal construction mandate affects statutory construction only when the statutory language is ambiguous and the intent of the enacting body is in doubt, however; it cannot be invoked when, as here, the meaning of the statutory language is not otherwise uncertain. (See, e.g., *Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1323 [57 Cal.Rptr.3d 644, 156 P.3d 1100]; *Sierra Club v. California Coastal Com.* (2005) 35 Cal.4th 839, 856 [28 Cal.Rptr.3d 316, 111 P.3d 294]; *City of Huntington Beach v. Board of Administration* (1992) 4 Cal.4th 462, 472 [14 Cal.Rptr.2d 514, 841 P.2d 1034].)

■ Plaintiffs argue that their position is supported by Insurance Code section 1861.03, subdivision (a), which provides: "The business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to, the Unruh Civil Rights Act . . . and the antitrust and unfair business practices laws." The quoted provision was added by Proposition 103, which the voters passed at the November 8, 1988 General Election. (See *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 239–240 [32 Cal.Rptr.2d 807, 878 P.2d 566].) Proposition 103 does not apply to life insurance, and we have previously declined to decide whether Insurance Code section 1861.03, subdivision (a), applies to all lines of insurance. (*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 282 [41 Cal.Rptr.2d 220, 895 P.2d 56].) Assuming for the sake of argument that this provision does apply to the insurance industry generally, its effect is merely to preclude courts from exempting insurance from general laws that would otherwise apply to it. The Consumers Legal Remedies Act is not an otherwise applicable general law, however. Rather than applying to all businesses, or to business transactions in general, the Consumers Legal Remedies Act applies only to transactions for the sale or lease of consumer "goods" or "services" as those terms are defined in the act. Insurance Code section 1861.03, subdivision (a), does not override the limitations that the Legislature incorporated into that statutory scheme.

Finally, plaintiffs contend that if life insurance policies by themselves are not services as defined in the Consumers Legal Remedies Act, the work or labor of insurance agents and other insurance company employees in helping consumers select policies that meet their needs, in assisting policyholders to keep their policies in force, and in processing claims are services that are sufficient to bring life insurance within the reach of the Consumers Legal Remedies Act. We disagree.

■ As Farmers points out, ancillary services are provided by the sellers of virtually all intangible goods—investment securities, bank deposit accounts and loans, and so forth. The sellers of virtually all these intangible items assist prospective customers in selecting products that suit their needs, and they often provide additional customer services related to the maintenance, value, use, redemption, resale, or repayment of the intangible item. Using the existence of these ancillary services to bring intangible goods within the coverage of the Consumers Legal Remedies Act would defeat the apparent legislative intent in limiting the definition of "goods" to include only "tangible chattels." (Civ. Code, § 1761, subd. (a).) We conclude, accordingly, that the ancillary services that insurers provide to actual and prospective purchasers of life insurance do not bring the policies within the coverage of the Consumers Legal Remedies Act.

## DISPOSITION

The Court of Appeal's judgment is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.