**Douglas J. CAMPION, Plaintiff,**

v.

**OLD REPUBLIC HOME PROTECTION COMPANY, INC., Defendant.**

Case No. 09–CV–748–JMA(NLS).

United States District Court, S.D. California.

March 23, 2012.

Francis A. Bottini, Chapin Fitzgerald Sullivan & Bottini LLP, San Diego, CA, for Plaintiff.

Chad R. Fuller, Goodwin Procter LLP, Tammy H. Boggs, Foley & Lardner LLP, San Diego, CA, Jay N. Varon, Foley & Lardner LLP, Washington, DC, for Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 79] AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE THE FIRST AMENDED CLASS ACTION COMPLAINT [DOC. NO. 89]**

JAN M. ADLER, United States Magistrate Judge.

Two motions are currently pending before the Court. The first to be filed was Defendant Old Republic Home Protection Company, Inc.'s Motion for Summary Judgment on Claim for Violation of Consumer Legal Remedies Act ("CLRA") and on all Claims as to Injunctive Relief, which was filed on October 28, 2011. [Doc. No. 79.] Plaintiff Douglas J. Campion filed an opposition brief on January 6, 2012, and Defendant's reply was filed on January 13, 2012. [Doc. No. 85 & 86.]

Thereafter, on January 27, 2012, Plaintiff filed a Motion for Leave to File the First Amended Class Action Complaint. [Doc. No. 89.] Defendant opposed Plaintiff's motion on February 15, 2012, and Plaintiff's reply brief was filed on February 22, 2012. [Doc. No. 90 & 91.] A hearing was held on both motions on February 29, 2012. Francis A. Bottini, Esq. appeared on behalf of Plaintiff and Jay N. Varon, Esq. and Andrew B. Serwin, Esq. appeared on behalf of Defendant. After due consideration of the parties' briefs and oral arguments, and as set forth below, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for leave to file an amended complaint.

## I. FACTUAL BACKGROUND

Defendant sells home warranty plans to homeowners. *Complaint,* ¶ 25. Plaintiff's Complaint alleges how Defendant's home warranty plans work and the plan Plaintiff purchased from Defendant (the "Plan") is incorporated by reference. *Id.* at ¶ 9, Ex. B. Based on the Complaint and the Plan, the following facts are undisputed. In essence, Defendant's home warranty plans provide that covered systems and appliances that become inoperable during the contract term due to normal wear and tear will be repaired or replaced at Defendant's expense, or the plan holder will be provided with payment in lieu of repair or replacement. *Id.* at ¶ 25, Ex. B. Defendant does not repair or replace covered systems itself, but rather maintains a network of independent contractors that it can dispatch to a plan holder's home to perform the service. *Id.* at ¶¶ 27–28, Ex. B. The decision to repair or replace the covered systems, as opposed to providing the plan holder with payment, rests solely with Defendant. *Id.,* Ex. B.

Plaintiff purchased a plan from Defendant that was effective from April 26, 2007 to April 26, 2008. *Id.* at ¶ 9, Ex. B. In February 2008, he made a warranty claim regarding his garbage disposal. *Id.* at ¶ 34. After dispatching a contractor to Plaintiff's home to inspect the unit, Defendant informed Plaintiff it was denying his claim on the basis the garbage disposal was improperly installed. *Decl. of Tammy H. Boggs in Supp. of Def. Old Republic Company, Inc.'s Mot. for Summ. J. on Claim for Violation of CLRA and on all Claims for Injunctive Relief ("Boggs Decl."),* Ex. B (Transcript of Deposition of Douglas J. Campion ("Campion Depo.") pp. 30–36, ln. 11–12).[1] Plaintiff did not renew his home warranty plan when it expired. *Id.* at p. 27, ln. 3–15. He does not currently have a home warranty plan with Defendant and does not intend to purchase another one. *Id.* at p. 27, ln. 8–15; p. 65, ln. 12–19.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on March 6, 2009. In it, he alleges on behalf of himself and the putative class members, Defendant fraudulently induced them to purchase warranty plans by misrepresenting that it would pay the cost of covered items under the home warranty plans when, in fact, it maintained policies, procedures and economic incentives to deny legitimate claims or to shift the majority of the costs for repair or replacement work to the policyholder. *Complaint,* ¶ 51 and 71. He sought to represent a class defined as:

> All persons and entities in the United States who, during the period from approximately March 6, 2003, through the present (the "Class Period"), made a claim under a home-warranty plan obtained from Defendant Old Republic Home Protection Company, Inc. Excluded from the class are defendants and their parents, subsidiaries, affiliates, all governmental entities, and co-conspirators.

*Id.* at ¶ 15. The causes of action asserted include Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Violation of Cal. Civ.Code § 1790 (CLRA), Violation of Cal. Bus. & Prof. Code § 17200 (Unfair Competition Law ("UCL")), Violation of Cal. Civ.Code § 1710(1) (Intentional Misrepresentation & Concealment), and Violation of Cal. Civ. Code § 1710(4) (False Promise).

---

1. Plaintiff made a second claim under the Plan for problems he was experiencing with his electric range/oven. *Boggs Decl.,* Ex. B, Campion Depo. pp. 28–30; ln. 7–7. Another contractor responded to the claim, Plaintiff paid the $50 service fee, and the appliance was repaired to Plaintiff's satisfaction. *Id.*

On September 19, 2010, following a Case Management Conference, the Court entered a scheduling order, setting a deadline for any motions to amend the pleadings or add parties of November 9, 2009, and a deadline for the filing of Plaintiff's class certification motion of April 16, 2010. [Doc. No. 17.] The deadline for the filing of the class certification motion was later continued to May 28, 2010, per the parties' agreement. [Doc. No. 26.] On May 28, 2010, Plaintiff moved for leave to amend his complaint [Doc. No. 36] and also to certify a class under Fed.R.Civ.P. 23(b)(2) and (b)(3) [Doc. No. 30]. On July 17, 2010, the Court denied the motion for leave to amend, finding that even if Plaintiff had established good cause to afford him leave from the scheduling order deadline, as required by Fed.R.Civ.P. 16(b), the proposed amendment would be futile under Fed. R.Civ.P. 15(a). [Doc. No. 42.] After the conclusion of briefing on the motion for class certification, on January 6, 2011, 272 F.R.D. 517 (S.D.Cal.2011), the Court also denied that motion, finding certification was not appropriate under either Rule 23(b)(2) or (b)(3). [Doc. No. 56.] Plaintiff then filed a Motion for Reconsideration, or in the Alternative, Request for Clarification, of the Court's denial of class certification, which was denied on May 20, 2012. [Doc. No. 58 & 64.]

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Fed.R.Civ.P. 56(a) permits a party to seek summary judgment on all or part of a claim or defense. Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material

issue of fact is a question that a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party bears "the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322, 106 S.Ct. 2548. Where the moving party does not have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways. "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir.2000). To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir.2000). A party asserting that a fact is genuinely disputed cannot rely solely on its pleadings, but must support that assertion with affidavits, depositions, or answers to interrogatories. Fed.R.Civ.P. 56(c)(1); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir.2003). To avoid summary judgment, the non-moving party need not produce evidence in a form that

would necessarily be admissible at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Unsupported conjecture or conclusory statements, however, are insufficient to defeat summary judgment. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir.2008); *Hernandez*, 343 F.3d at 1112. The standard applied to a motion seeking partial summary judgment is identical to the standard applied to a motion seeking summary judgment with respect to the entire case. *Freescale Semiconductor, Inc. v. ChipMOS Tech., Inc.*, 2011 WL 4014466 *1–2, 2011 U.S. Dist. LEXIS 100978 *4 (N.D.Cal. Sept. 8, 2011)

### B. The CLRA Does Not Cover Defendant's Home Warranty Plans.

█ Plaintiff's third cause of action alleges Defendant's conduct violates the CLRA, which prohibits specific unfair and deceptive acts and practices in a "transaction intended to result or which results in the sale or lease of goods or services to any consumer." *Complaint*, ¶¶ 48–56; Cal. Civ.Code § 1770. Defendant moves for summary judgment as to this claim, contending its home warranty plans are analogous to insurance, relying on *Fairbanks v. Superior Court*, 46 Cal.4th 56, 61–62, 92 Cal.Rptr.3d 279, 205 P.3d 201 (2009), in which the California Supreme Court determined life insurance is neither a good nor a service and, therefore, not covered by the CLRA. *Mem. of P. & A. in Supp. of Mot. for Summ. J. ("Mot. for Summ. J."),* pp. 6–9. Plaintiff counters that Defendant's home warranty contracts fall under the CLRA because they are service contracts, not insurance. *Opp'n to Def.'s Mot. for Summ. J. ("Opp'n to MSJ."),* p. 5.

Goods are defined under the CLRA as "tangible chattels," which the home warranty plans clearly are not. Cal. Civ.Code § 1761(a). Defendant's home warranty plans must qualify as services, therefore, in order for the CLRA to apply. Services are defined by the CLRA as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ.Code § 1761(b).

The California Supreme Court held in *Fairbanks* that life insurance is not a "service" under the CLRA because "[a]n insurer's contractual obligation to pay money under a life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible chattel." *Fairbanks*, 46 Cal.4th at 61, 92 Cal.Rptr.3d 279, 205 P.3d 201. In a case involving similar allegations against another home warranty plan company, the Hon. Marilyn L. Huff recently considered the application of *Fairbanks* to home warranty plans similar to those offered by Defendant. *Diaz v. First American Home Buyers Protection Corp.*, 09CV775–H(WMC), Doc. 15 (S.D.Cal. July 22, 2009.) Observing that the *Fairbanks* holding is limited to life insurance, Judge Huff found the reasoning behind the California Supreme Court's decision similarly applies to home warranty plans. *Id.*, p. 5–6. In doing so, she examined *Truta v. Avis Rent A Car Sys., Inc.*, 193 Cal.App.3d 802, 238 Cal.Rptr. 806 (Cal.Ct.App.1987), which is cited by Plaintiff in support of his argument that Defendant's warranty plans are "service contracts" that are covered by the CLRA. *Opp'n to MSJ*, pp. 5–6.

Holding that car rental companies did not engage in the unauthorized practice of insurance by providing collision damage waivers to customers, the *Truta* court provided the following guidance: "In analyzing whether a contract constitutes insurance" courts should consider whether "the elements of risk transference and risk distribution" were "a central and relatively important element of the transactions or instead merely incidental to other elements that gave the transactions their distinctive character." at 812 (quotation omitted); *see also Title Ins. Co. v. State Bd. of Equalization,* 4

Cal.4th 715, 726, 14 Cal.Rptr.2d 822, 842 P.2d 121 (1992) (same). In *Truta,* the court concluded that the car rental companies were not issuing insurance under the insurance code because the "principal object and purpose of the transaction" before them, "the element which gives the transaction its distinctive character," was the rental of an automobile. at 813.

In contrast, the transfer of risk involved in First American's home protection warranties is not merely incidental to other more distinctive elements of the transactions. Instead, that risk transference is a central and relatively important element of the warranties. Accordingly, the Court is not convinced that Defendant's warranty plans are not insurance. Moreover, the California Insurance Code lists the home protection contract under "Classes of Insurance" and defines it as "a contract or agreement whereby a person, other than a builder, seller, or lessor of the home which is the subject of the contract, undertakes for a specified period of time, for a predetermined fee, to repair or replace all or any part of any component, system or appliance of a home necessitated by wear and tear, deterioration or inherent defect, arising during the effective period of the contract . . . ." Cal. Ins.Code § 12740(a). Defendant's warranty plans fit squarely within this definition.

*Diaz,* pp. 6–7.

Plaintiff does not address *Diaz,* but instead directs the Court's attention to *Edelson,* a decision issued by the San Diego County Superior Court in what Plaintiff describes as a "factually similar class action lawsuit against another home warranty company." *Opp'n to MSJ,* p. 5; *Decl. of Francis A. Bottini, Jr. in Supp. of Plaintiff's Opp'n to Def's Mot. for Summ. J. ("Bottini Opp'n to MSJ Decl."),* Ex. E, *Edelson v. American Home Shield,* Case No. 37–2007–00071725–CU, BT–CTL [Super. Ct. S.D., October 19, 2007]. In *Edelson,* which predates the California Supreme Court's decision in *Fairbanks,* the court held that home warranty plans do not amount to insurance for purposes of the CLRA. *Id.*

Plaintiff also requests judicial notice be taken that Defendant is not licensed to sell insurance in California and it describes the home warranty plan as a "one-year service contract" on its website. *Opp'n to MSJ,* pp. 6–7; *Bottini Opp'n MSJ Decl.,* Ex. B & C. Furthermore, Plaintiff contends, Defendant, as a member of the California Home Service Contract Association, has taken the position that home protection contraction contracts are fundamentally different from insurance policies because: 1) home warranty plans provide actual repair and replacement services, whereas insurance policies provide only money or other compensation to the insured; 2) home warranty plans cover the repair and replacement of household systems and appliances that can be expected to require these services within a fairly predictable period of time, whereas insurance policies cover fire, theft, accidents, storms and other sudden and fortuitous events; and 3) home warranty plan holders' requests for service are handled telephonically, without the need for claims forms and adjusters, whereas insurance policy claims are not. *Id.,* p. 7. Plaintiff's arguments, however, miss the mark. The salient issue is not whether Defendant actually issues insurance policies, but rather whether the plans issued by Defendant are sufficiently analogous to insurance such that they are neither a "good" nor a "service," as defined by the CLRA.

The *Diaz* decision is well-reasoned, directly on point, and more compelling than *Edelson* or Plaintiff's argument that the plans are actually "service contracts." Defendant's home warranty plans are not

contracts for repair or replacement services and Defendant does not itself provide these services. Instead, the plans are designed to offer protection to home owners from potential future losses. The plans obligate Defendant to pay for the cost of the repair or replacement of covered systems and appliances that become inoperable due to normal wear and tear during the term of the contract. It is possible a claim may never be submitted and, thus, a homeowner may not receive any "goods or services" under his or her plan. The home warranty plans provide for a transfer of risk that is not merely incidental, but rather is a central and relatively important element of the plans, and the relationship between Defendant and its plan holders and their respective obligations are consistent with the concept of "insurance," as it is defined in the Insurance Code.[2] Thus, as set forth in *Diaz* and above, the Court concludes the reasoning of *Fairbanks* is applicable to Defendant's home warranty plans, which are not "services" within the meaning of the CLRA.[3] As a result, Defendant is entitled to summary judgment as to Plaintiff's CLRA claim.

### C. Plaintiff Does Not Have Article III Standing to Pursue Injunctive Relief

■ Plaintiff seeks injunctive relief under the CLRA and his fourth cause of action, which arises under the UCL. The UCL is a broad remedial statute that permits individuals to challenge "unfair competition" practices, which are broadly defined as including "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising...." *Complaint,* pp. 12–14; *Lozano v. AT & T Wireless Services, Inc.,* 504 F.3d 718, 731 (9th Cir.2007); Cal. Bus. & Prof.Code § 17200. A UCL-based claim is equitable in nature and damages cannot be recovered. *Durell v. Sharp Healthcare,* 183 Cal.App.4th 1350, 1359, 108 Cal. Rptr.3d 682 (2010). "Prevailing plaintiffs are generally limited to injunctive relief and restitution." *Id.* (citation omitted).

■ Defendant's second argument in support of its motion for summary judgment is that Plaintiff lacks Article III standing to obtain injunctive relief because he is not a current plan holder, has no intention of purchasing another home warranty plan from Defendant and, even if he were to buy another of Defendant's home warranty plans, he is aware of Defendant's alleged business practices. *Mot. for Summ. J.,* pp. 9–15. All of these factors, Defendant asserts, preclude Plaintiff from demonstrating that he faces a realistic threat of repetition of harm. *Id.* The argument is directed only to Plaintiff's ability to obtain injunctive relief. Defendant does not contend Plaintiff lacks standing to pursue restitution under the UCL or damages under his other causes of action.

■ Plaintiff raises a procedural objection to the motion, which the Court will address before turning to the substantive arguments. He argues, without citing any authority, that Defendant's motion is procedurally improper because summary judgment is not appropriate for a request

---

**2.** Cal. Ins.Code § 22 defines insurance as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event."

**3.** Although not discussed by either party, after the California Supreme Court's decision in *Fairbanks,* and the subsequent *Diaz* decision, the San Diego County Superior Court relied on the reasoning of both cases in ruling the CLRA does not apply to home warranty plans. *Decl. of Francis A. Bottini, Jr. in Supp. of Mot. for Leave to File the First Amended Complaint ("Bottini Mot. for Leave to Amend Decl."),* Ex. B, *Kaplan v. Fidelity Nat'l Home Warranty Co.,* Case No. 37–2008–00087962–CU–BT–CTL, filed November 1, 2011.

for relief, as opposed to an entire claim, and Defendant has not moved for partial summary judgment or summary adjudication. *Opp'n to MSJ*, p. 8. The objection is not supportable. Rule 56(a) specifically provides that a motion may be directed to part of a claim or defense and Defendant's moving papers clearly set forth the standard for partial summary judgment. *Mot. for Summ. J.*, p. 6.

 Article III of the U.S. Constitution limits the jurisdiction of federal courts. To meet the Article III standing requirement "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC) Inc.*, 528 U.S. 167, 180–181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A plaintiff seeking to obtain declaratory or injunctive relief must establish that he or she is "realistically threatened by a repetition of the violation" in order to establish the relief sought would redress the alleged injuries. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir.2006); *see also Summers v. Earth Island Institute*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (no standing where the plaintiff was not realistically threatened by a repetition of a police officer's chokehold because it was unlikely he would act illegally in the future.) Furthermore, a plaintiff must have standing for each type of relief sought. *Summers*, 555 U.S. at 493, 129 S.Ct. 1142, *citing Lyons*, 461 U.S. at 109, 103 S.Ct. 1660.

Plaintiff argues he "clearly has Article III standing," and that he need not be in a current contractual relationship with Defendant in order to have standing to seek injunctive relief under the UCL. *Opp'n to MSJ*, pp. 8–9. In making this argument, he conflates the issue of whether he has Article III standing to assert a claim under the UCL with the issue as to whether he has Article III standing to seek injunctive relief under the UCL. For example, he argues the issue of standing has already been determined in connection with the class certification motion. *Id.*, p. 8. At that time, however, the Court was only called upon to determine whether Plaintiff had Article III standing to assert a claim under the UCL, not whether he had Article III standing to seek injunctive relief under the UCL. As mentioned earlier, and as the Court noted in its order on the motion for class certification, there is no dispute as to whether Plaintiff has Article III standing to seek restitution under the UCL. [Doc. No. 56, p. 6.]

The two cases on which Plaintiff primarily relies are *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir.2011) and *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 111 Cal.Rptr.3d 666, 233 P.3d 1066 (2010). In *Stearns*, the Ninth Circuit simply addressed whether Article III standing existed at all, which is not at issue here. *Id.* (holding that named class plaintiffs who asserted they and putative class members were relieved of money during the allegedly wrongful transactions had standing to prosecute class claims under the UCL.)

Plaintiff relies on *Clayworth* for the proposition that Cal. Bus. & Prof.Code § 17204 only requires a plaintiff to have "suffered injury" to establish standing to seek injunctive relief under the UCL, and that a plaintiff need not be in a current contractual relationship with the defendant to do so. *Opp'n to MSJ*, pp. 9–10. In

*Clayworth,* pharmacists filed claims under the Clayton Act and the UCL alleging manufacturers of certain pharmaceutical drugs had engaged in price fixing, causing the plaintiffs to purchase the drugs at inflated prices. *Clayworth,* 49 Cal.4th at 764–765, 111 Cal.Rptr.3d 666, 233 P.3d 1066. The pharmacists did not purchase the drugs directly from the defendant manufacturers, instead acquiring them through wholesale distributers. Defendants challenged Plaintiffs' standing, as indirect purchasers, to seek relief under the Clayton Act and the UCL. Specifically, with regard to the UCL cause of action, Defendants argued Plaintiffs had not suffered a compensable loss because they were fully able to mitigate any injury by passing on the overcharges to the consumer. The California Supreme Court rejected this contention, reasoning "this argument conflates the issue of standing with the issue of the remedies to which a party may be entitled. That a party may ultimately be unable to prove a right to damages (or, here, restitution) does not demonstrate that it lacks standing to argue for its entitlement to them." *Id.* at 788, 111 Cal.Rptr.3d 666, 233 P.3d 1066. The court held, therefore, "the right to seek injunctive relief under section 17203 is not dependent on the right to seek restitution; the two are wholly different remedies." *Id.* at 790, 111 Cal.Rptr.3d 666, 233 P.3d 1066. Thus, a plaintiff who may not have a restitution claim could still seek injunctive relief under the UCL, so long as the plaintiff had suffered a monetary loss as a result of the alleged unfair business practices. *Id.*[4]

*Clayworth* and the other state court cases cited by Plaintiff are simply not controlling here. The decisions address standing under the UCL, not the standing requirement of Article III, which determines whether a federal court has jurisdiction over a claim or part of a claim. Thus, even if *Clayworth* stands for the proposition that standing to pursue injunctive relief under the UCL only requires a past injury, and the threat or possibility of ongoing harm is irrelevant, as Plaintiff posits, it would not negate the inquiry as to whether Plaintiff has standing under Article III. Even if Plaintiff had standing to seek injunctive relief in state court, he cannot pursue that form of relief in federal court if he does not establish standing under Article III. *See e.g., Lee v. Am. Nat. Ins. Co.,* 260 F.3d 997, 1001–02 (9th Cir. 2001) (stating a "plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury"); *Midpeninsula Citizens for Fair Housing,* 221 Cal. App.3d at 1386, 271 Cal.Rptr. 99 (while discussing standing under the UCL, the court observed that California courts are not constrained by the more restrictive case and controversy requirement of Article III.)

The cases on which Defendant primarily relies specifically address the require-

---

4. Plaintiff also cites *Hall v. Time,* 158 Cal. App.4th 847, 854, 70 Cal.Rptr.3d 466 (2008) (for the proposition B & P Code § 17204 "requires only that a plaintiff has 'expended money due to the defendant's acts of unfair competition' "); *Aron v. U–Haul Co. of California,* 143 Cal.App.4th 796, 802–803, 49 Cal. Rptr.3d 555 (2006) (as an example of where "plaintiff had standing to pursue UCL action because he suffered economic loss be (*sic*) being required to purchase excess fuel"), and *Midpeninsula Citizens for Fair Housing v. Westwood Investors,* 221 Cal.App.3d 1377, 1393, 271 Cal.Rptr. 99 (1990) (cited as "holding that a 'representative organization which does not have ... standing under the Unruh Act is nonetheless entitled, pursuant to [§ 17204], to seek injunctive relief from alleged violations of the act.' ") *Opp'n to MSJ,* p. 11.

ments of Article III. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939 (S.D.Cal.2007); *Laster v. T-Mobile USA, Inc.*, 2009 WL 4842801, at *1–2, 2009 U.S. Dist. LEXIS 116228, at *3–4 (S.D.Cal. Dec. 14, 2009). In *Cattie*, the plaintiff alleged the thread count of linens she purchased from the defendant's website was lower than advertised. *Cattie*, 504 F.Supp.2d at 941. She filed a putative class action, seeking to enjoin the defendants from "engaging in the false advertising and marketing campaign," and a declaration that they had violated the UCL and the False Advertising Law ("FAL"). *Id.* at 951. Defendant states "[t]he *Cattie* court found it lacked jurisdiction because it was unclear that prospective relief could redress plaintiff's injury since she was then fully aware of the linens' thread count, and because she failed to allege she would purchase linens from the defendant in the future." *Mot. for Summ. J.*, p. 11.[5]

In *Laster*, the named plaintiffs in a putative class action claimed defendant had violated the UCL, FAL, and CLRA because it had charged and collected sales tax on the full retail value of a cell phone that was advertised as "free" or at a substantially discounted price. *Laster*, 2009 WL 4842801, at *1–2, 2009 LEXIS 116228, at *3–4. In considering defendants' summary judgment motion, the Hon. Dana M. Sabraw relied on *Cattie* and found the plaintiffs had established Article III standing to pursue their restitution claim because they had alleged pecuniary injury, but held they did not have standing under Article III for their declaratory and injunctive relief claims because their current knowledge that defendants would seek

sales tax reimbursement equal to the full retail price of the phone(s) purchased precluded them from showing likelihood of future injury. *Id.* at *3–4, 2009 LEXIS 116228 at *8–10.

*In re Napster, Inc. Copyright Litigation*, 354 F.Supp.2d 1113 (N.D.Cal.2005), which is also cited by Defendant but is not addressed by Plaintiff, is also instructive. In *Napster*, the defendant filed a counterclaim under the UCL, alleging plaintiff had engaged in a conspiracy to restrain trade in the online music industry. *Id.* at 1127. The court dismissed the UCL counterclaim on the basis no facts were alleged that would entitle the defendant/counterclaimant to any of the remedies available under the UCL, because it did not allege any ongoing injury from plaintiff's conduct and plaintiffs were not in possession of the funds that would be the basis for a restitution remedy. *Id.*

The reasoning of *Laster*, *Cattie* and *Napster* is highly persuasive. Article III imposes a jurisdictional requirement that is more stringent than the UCL, and which, with respect to Plaintiff's claim for injunctive relief, is not satisfied. Plaintiff argues *Clayworth* post-dates *Laster* and *Cattie*, but that argument is irrelevant. Irrespective of whether *Clayworth* can be interpreted as holding the UCL affords standing to pursue injunctive relief even without the threat or possibility of ongoing harm, the relevant issue here is whether standing is satisfied under Article III.

Plaintiff, as a matter of law, can not establish that he is under any threat of suffering actual and imminent future

---

**5.** Plaintiff points out this aspect of *Cattie* is dicta since, in the course of considering a motion to dismiss filed by defendant raising other arguments challenging Plaintiff's standing, the Hon. Larry A. Burns *sua sponte* expressed concern "that Plaintiff may lack standing to seek injunctive or declaratory relief" and remarked "it is questionable whether this Court can grant Plaintiff's requests for injunctive and declaratory relief." *Cattie*, 504 F.Supp.2d at 941. As discussed in the text, *infra*, even though this part of *Cattie* is dicta, the Court finds its reasoning to be persuasive.

harm. Plaintiff's UCL claim is based entirely on a past transaction, namely, Plaintiff's purchase of a home warranty plan from Defendant and Defendant's subsequent denial of Plaintiff's claim for service of his garbage disposal. Plaintiff no longer has a warranty plan with Defendant and testified that he does not ever intend to purchase another one. Furthermore, even if Plaintiff were to purchase another home warranty plan from Defendant, he now has knowledge of Defendant's alleged misconduct. Thus, Plaintiff cannot show he is realistically threatened by a repetition of the alleged violation. Without a showing there is an actual and immediate threat that Plaintiff will be wronged again in the same way by Defendant, Plaintiff lacks standing under Article III to seek injunctive relief. *Gest,* 443 F.3d at 1181; *Summers,* 555 U.S. at 493, 129 S.Ct. 1142; *Lyons,* 461 U.S. at 109, 103 S.Ct. 1660; *Laster,* 2009 WL 4842801 at *1–2, 2009 U.S. Dist. LEXIS 116228 at *3–4. Consequently, Defendant is entitled to summary judgment as to Plaintiff's claims for injunctive relief.

## IV. PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Plaintiff's Motion for Leave to File a First Amended Complaint seeks leave to add a new false advertising claim (Cal. Bus. & Prof.Code § 17500) and a new concealment claim (Cal. Civ.Code § 1710(3)). Plaintiff also seeks to revise the class definition which had been all persons who, during the class period, made a claim under a home warranty plan issued by Defendant, to include both persons who purchased and received policies from Defendant, and to include a subclass that includes only persons who made a claim that was denied, or was approved but where the policy holder had to pay any amount above the trade call fee. *Decl. of Francis A. Bottini in Supp. of Mot. for Leave to File a First Amended Complaint,* Ex. A.

### A. Legal Standard

 Generally, Fed. R. of Civ. P. 15(a) liberally allows for amendments to pleadings. *Coleman v. Quaker Oats, Co.,* 232 F.3d 1271, 1294 (9th Cir.2000). Once the Court issues a pretrial scheduling order pursuant to Fed.R.Civ.P. 16(b) setting a deadline for amending the pleadings, however, the Court must look to that rule in determining whether amendment should be allowed. *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607–08 (9th Cir.1992). Rule 16(b) requires the party requesting amendment demonstrate "good cause" for seeking the amendment late. *Johnson,* 975 F.2d at 608. " 'A court's evaluation of good cause [under Rule 16(b) ] is not coextensive with an inquiry into the propriety of the amendment under ... Rule 15.' " *Id.* at 609 (citation omitted). Rather, the "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Id.* "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (internal citation omitted). Once "good cause" is shown, the moving party must also demonstrate the proposed amendment would be proper under Rule 15. *Id.* at 608. Under Rule 15, leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay or prejudice to the opposing party. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Under the Scheduling Order, any motion to amend pleadings must have been filed

by November 9, 2009. [Doc. No. 17.] Plaintiff did not file his motion to amend until January 27, 2012—two years and two months past the deadline. Accordingly, Plaintiff must demonstrate "good cause" under Rule 16(b). *See Johnson,* 975 F.2d at 607–08.

## B. Plaintiff Has Not Demonstrated Good Cause under F.R.C.P. 16(b)

 Plaintiff argues he has been diligent in his prosecution and handling of the case and that good cause exists to allow the amendment because he could not have predicted the need for the amendment until his class certification motion had been denied. *Mot. for Leave to File a First Amended Complaint,* p. 7–9. He argues he became aware of the need to amend only after the Court denied his motion for reconsideration on May 20, 2012, but contends even then he was still unable to seek leave to amend his Complaint because he was involved in settlement discussions until October 2011. *Reply in Supp. of Mot. for Leave to File a First Amended Complaint,* p. 3–5.

Plaintiff's assertions have several fundamental flaws. First, the new causes of action—fraud and concealment—are not "new" theories, but rather legal theories that have been manifest all along, and that could have been asserted from the outset, or if not, certainly by the deadline to amend pleadings, and in no event later than Plaintiff's first motion for leave to file an amended complaint. Plaintiff's Complaint, in fact, already includes a cause of action for intentional misrepresentation and concealment and a UCL claim, which are both predicated on Plaintiff's allegations of deceptive advertising. *Complaint,* pp. 12–16. Plaintiff has advanced these theories and their factual underpinnings since the inception of this case, and class certification of these claims was fully considered and rejected by the Court. [Doc. No. 30–1, *pp. 3–4, 16, 25–26;* Doc. No. 56,

pp. 21–27; Doc. No. 64, p. 10.] There is no plausible reason, therefore, why these proposed "new" causes of action could not have been sought to be included long before now.

Second, Plaintiff has not acted with diligence to redefine the proposed class. The motion for class certification was denied on January 6, 2011, over a year before Plaintiff's motion for leave to amend was filed. [Doc. No. 56]. The denial of the motion was without prejudice to Plaintiff seeking to modify the proposed class definition and attempting to certify an alternate class. *Id.* Instead of seeking leave to amend the proposed class definition at that time, Plaintiff elected to file a motion for reconsideration or, in the alternative, clarification. [Doc. No. 58.] The motion for reconsideration was denied on May 20, 2012, also without prejudice to Plaintiff pursuing an alternate class theory. [Doc. No. 64.] Plaintiff, however, still did not seek to amend his class definition at that point. Instead, during a Case Management Conference on June 14, 2011, Mr. Bottini informed counsel and the Court that Plaintiff did not plan to appeal the Court's denial of the motion for class certification, or to try to obtain certification of another class, and intended to proceed with his individual claims for injunctive relief under the CLRA and the UCL. [Doc. No. 70.] It was this development that was the impetus for the settlement discussions that Plaintiff now claims prevented him from seeking to amend his class definition earlier.

The settlement discussions lasted only a few months. During the Case Management Conference that was held on September 9, 2012, it was apparent the settlement talks were not likely to be successful, and on October 12, 2012, during another Case Management Conference, counsel reported settlement negotiations had completely broken down and that Defendant intended

to file a summary judgment motion challenging Plaintiff's CLRA claim and request for injunctive relief. [Doc. No. 76 & 78.] Plaintiff's counsel again stated he intended to move forward toward trial of Plaintiff's individual claims for injunctive relief, and made no mention of any plans to seek to amend the Complaint to assert a new class definition.

Defendant's motion for summary judgment was filed on October 28, 2012, and because it was originally set for hearing on January 20, 2011, briefing was completed on January 13, 2012. [Doc. No. 79 & 86.] Nonetheless, despite having ample time and numerous opportunities to do so, Plaintiff did not seek leave to file an amended complaint until January 27, 2012. Given the considerable amount of time that has lapsed since Plaintiff's motion for class certification was denied, the ample opportunities he has had to pursue an alternate class theory, and his counsel's representations after the denial of the motion for reconsideration that the case would be pursued as an individual action, the Court does not find that Plaintiff has been diligent or established good cause to allow the proposed amendment.

Although the inquiry as to whether an amendment should be permitted should end at this point, the Court can also—but does not have to—look at the prejudice to Defendant in determining whether Plaintiff's late motion to amend should be granted or denied. In this case, the parties have already completed substantial discovery and Plaintiff did not seek leave to amend until after Defendant's motion for summary judgment had been fully briefed. These reasons also weigh in favor of denying Plaintiff's late motion to amend. *See Matsumoto v. Republic Ins. Co.*, 792 F.2d 869, 872 (9th Cir.1986) (holding the district court did not abuse its discretion in denying motion to amend where discovery had already commenced and defendant's

motion for summary judgment was pending); *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir.1981) (holding the district court did not abuse its discretion in denying leave to amend where the "issue was raised at the eleventh hour, after discovery was virtually complete and [defendant's] motion for summary judgment was pending before the court").

### C. Plaintiff Also Has Not Satisfied F.R.C.P. 15(a)

■ Furthermore, even if Plaintiff could establish good cause under Rule 16(b), he would still have to demonstrate the amendment would be proper under Rule 15(a). Although leave to amend is liberally granted under Rule 15(a), undue delay, bad faith in seeking amendment, or undue prejudice to the party opposing amendment are grounds for denying leave to amend. *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *M/V American Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir.1983); *Roberts*, 661 F.2d at 798. As discussed in connection with the Court's consideration of Rule 16(b), Plaintiff has engaged in undue delay in seeking leave to amend his Complaint, and permitting the amendment would unduly prejudice Defendant. *See also Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir.1986) (district court's denial of motion to amend on basis of undue prejudice to Defendant under Rule 15(a) was not abuse of discretion, where late inclusion of a cause of action previously available to plaintiff was sought in order to avoid possibility of adverse summary judgment ruling). Moreover, late amendments to assert new theories are not viewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action. *Id., citing M/V American Queen*, 708 F.2d at 1492; *Stein*

*v. United Artists Corp.*, 691 F.2d 885, 898 (9th Cir.1982).

### V. CONCLUSION

Based on the foregoing, the Court finds that Defendant's home warranty plans are not "services" within the meaning of the CLRA and that Plaintiff does not have standing under Article III to pursue injunctive relief. Defendant's Motion for Summary Judgment is, therefore, GRANTED. The Court further finds that Plaintiff has not demonstrated good cause to allow the amendment of his Complaint under Rule 16(b) and, even if he had done so, he has not satisfied the more liberal requirements of Rule 15(a). Accordingly, his motion for leave to amend is DENIED.