Filed 12/17/13  Kaplan v. Fidelity National Home Warranty CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| DAN KAPLAN et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>FIDELITY NATIONAL HOME<br>WARRANTY COMPANY,<br><br>    Defendant and Appellant. | D062531<br>D062747<br><br><br>(Super. Ct. Nos. 37-2008-00087962-<br> CU-BT-CTL, 37-2008-00088433-<br> CU-BT-CTL) |

CONSOLIDATED APPEALS from a judgment of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed in part and reversed in part.

Bottini & Bottini, Francis A. Bottini, Jr., and Yury A. Kolesnikov for Plaintiffs and Appellants Dan Kaplan and James Baker.

Hahn Loeser & Parks and Michael J. Gleason, Steven A. Goldfarb and Kelly A. Kosek, for Defendant and Appellant Fidelity National Home Warranty Company.

Dan Kaplan and James Baker brought a class action against their home warranty company, Fidelity National Home Warranty Company (Fidelity), alleging Fidelity

engaged in claims-handling practices and other actions that violated consumer statutes and breached the parties' contracts and the implied covenant of good faith and fair dealing. One year after certifying the class, the court granted Fidelity's motion for judgment on the pleadings on two causes of action in plaintiffs' second amended complaint: an unfair competition claim (UCL) and a Consumers Legal Remedies Act claim (CLRA). (Bus. & Prof. Code, § 17200; Civ. Code, § 1750 et seq.) In granting the motion, the court dismissed the CLRA claim with prejudice, provided leave to amend on the UCL claim, and left untouched plaintiffs' common law claims.

One month later, plaintiffs filed a fourth amended complaint that greatly expanded the class definition, added several fraud-based claims, and supplemented the predicate UCL allegations. Fidelity moved to strike the new allegations, arguing they exceeded the scope of the court's order and were prejudicial. The court granted the motion to strike and refused plaintiffs' request to file an amended complaint consistent with the court's prior order. The court then dismissed the entire action and entered judgment in Fidelity's favor. The court later denied plaintiffs' Code of Civil Procedure section 473 motion.

On appeal, plaintiffs challenge the court's orders: (1) dismissing their CLRA claim; (2) granting the motion for judgment on the pleadings on the UCL claim with leave to amend; (3) granting the motion to strike their fourth amended complaint; (4) refusing to provide leave to file a corrected or amended complaint; and (5) denying their Code of Civil Procedure section 473 motion. In its cross-appeal, Fidelity challenges the court's earlier order certifying the class.

After the appeal was fully briefed, the California Supreme Court decided *Zhang v. Superior Court* (2013) 57 Cal.4th 364 (*Zhang*), which clarified the relevant law governing the UCL, particularly regarding the viability of a UCL claim predicated on common law claims that also allege violations of the Unfair Insurance Practices Act (UIPA). (Ins. Code, § 790, et seq.)[1] Pursuant to our request, the parties filed supplemental briefing on *Zhang*'s impact on the appellate issues. Fidelity also filed a motion challenging this court's authority to reach the merits of the UCL and *Zhang* issues. Plaintiffs opposed the motion and submitted responsive briefing.

After reviewing the record, the appellate briefing and motions, and the applicable law, we reach the following conclusions.

The court properly dismissed plaintiffs' CLRA cause of action. Because Fidelity's home warranty contracts are neither goods nor services as defined in the statute, they do not fall within the protection of the CLRA. (Civ. Code, §§ 1770, 1761, subd. (b).)

The issue whether the court erred in granting Fidelity's motion for judgment on the pleadings regarding plaintiffs' UCL claim alleged in the second amended complaint is not properly before us. Because plaintiffs modified the UCL cause of action in the fourth amended complaint, the second amended complaint on this claim was superseded by the fourth amended complaint. Thus, plaintiffs waived their right to challenge the court's UCL ruling on their second amended complaint.

---

[1] All statutory references are to the Insurance Code unless otherwise specified.

The court acted within its discretion in striking the fourth amended complaint because the amendments greatly expanded the class definition without permission and were inconsistent with the court's order regarding the proper scope of the amendments. However, the court erred in refusing to grant plaintiffs leave to file an amended or corrected complaint consistent with the court's prior order. Because the trial court's refusal to permit an amendment was based (in part) on an erroneous (pre-*Zhang*) view of the law governing UCL claims, the court did not have the opportunity to exercise its discretion in an informed manner. Under *Zhang,* it is likely the proposed amendment would withstand Fidelity's challenge to the pleadings on the UCL claim. Additionally, the record does not show Fidelity would suffer undue prejudice from the amendment. Thus, the amendment should have been permitted and we reverse the judgment dismissing the entire action.

In reversing and remanding, we uphold the court's orders: (1) granting the motion for judgment on the pleadings with respect to the CLRA claim and dismissing that claim from the action; and (2) striking the fourth amended complaint. On remand, the court shall issue an order permitting plaintiffs to amend or correct the fourth amended complaint in compliance with the court's prior orders and any new orders that are consistent with the views expressed in this opinion.

Based on our conclusion that the final judgment must be reversed, we do not reach Fidelity's cross-appeal challenging the court's previous class certification order. An order certifying a class is appealable only from a final judgment, and the final judgment has been reversed. This disposition does not preclude Fidelity on remand from seeking to

4

decertify the class on any valid ground. Because the issue is not before us, we express no opinion on the class certification question. Additionally, because we are reversing the final judgment, plaintiffs' contentions regarding their Code of Civil Procedure section 473 motion are moot.

FACTUAL AND PROCEDURAL BACKGROUND

*Background*

Fidelity sells home warranty plans in California and several other western states. The warranty contracts cover specified repairs and/or replacement of home systems and appliances. Under Fidelity's standard warranty agreements, an individual submits a claim by contacting Fidelity, which is required to contact a qualified contractor within three hours during normal business hours and 48 hours on weekends and holidays. The contractor must then directly contact the contract holder to schedule a mutually convenient appointment time. There is a $50 fee for each service call payable at the service time, even if the contractor decides the claim is not covered by Fidelity's plan. If a claim is covered, Fidelity pays for the covered repair/replacement costs.

In 2008, the two named plaintiffs filed separate complaints against Fidelity, alleging they had entered into home warranty agreements with Fidelity and had made claims under the agreements, but Fidelity failed to properly adjust and/or improperly denied the claims. Plaintiffs alleged Fidelity violated its contractual obligations and engaged in unfair and unlawful business practices. Plaintiffs later consolidated their complaints and added class allegations.

5

*Second Amended Complaint and Class Certification*

In August 2010, plaintiffs filed a second amended complaint on behalf of themselves and a class. Plaintiffs alleged that Fidelity uses standard, uniform home warranty contracts, and that its companywide policies result in a denial or loss of benefits to policyholders. Specifically, plaintiffs alleged that Fidelity selects and trains its third-party service providers to deny legitimate claims, refuse to authorize replacement of appliances, and increase the number of service calls. Fidelity also allegedly failed to adopt and implement reasonable standards for prompt investigation and processing of claims arising under the home warranty plans. According to plaintiffs, Fidelity "create[d] economic incentives for contractors to wrongfully deny claims and to shift the lion's share of cost of any repair or replacement work to the consumer."

Based on these and other allegations of improper conduct, plaintiffs asserted causes of action for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the CLRA; and (4) violation of the UCL.

On the breach of contract and bad faith claims, plaintiffs alleged they complied with all their obligations under the contracts, but were deprived of the contract benefits. Plaintiffs claimed that Fidelity breached its contracts and the implied covenant of good faith and fair dealing in numerous ways, including by "failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the home warranty plans, by economically incentivizing contractors to deny claims and to shift the majority of expenses associated with any repair or replacement work to the

6

consumer by training contractors to deny legitimate claims, and by taking actions to deprive Plaintiffs and the Class of the benefits of their contracts."

On the CLRA claim, plaintiffs alleged Fidelity violated the CLRA by engaging in the acts described above. They also alleged Fidelity misrepresented and falsely advertised that the Fidelity plans would "cover the costs of covered items," and that Fidelity (and not the contractors) would conduct a fair and objective investigation with regard to the submitted claims.

On the UCL claim, plaintiffs incorporated all of the factual allegations of the complaint, and alleged Fidelity's business practices were "unlawful, unfair, and fraudulent." As the predicate wrongful acts, plaintiffs alleged Fidelity's conduct: (1) violates section 790.03; (2) constitutes a breach of contract; (3) violates the implied covenant of good faith and fair dealing; and (4) violates the CLRA.

With respect to the predicate Insurance Code violations, plaintiffs alleged that Fidelity: (1) failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under Fidelity's home warranty plans (§ 790.03, subd. (h)(3)); (2) failed to " 'conduct and diligently pursue a thorough, fair and objective investigation' " and instead improperly delegated investigations to contractors (§ 790.03; Cal. Code Regs., tit. 10, § 2695.7, subd. (d)); (3) improperly trained and incentivized third-party contractors to deny legitimate claims; and (4) did not make disclosures required by the applicable statutes (§ 790.034).

Plaintiffs sought damages only with respect to the two named plaintiffs and only for their breach of contract and bad faith claims. On the remainder of the plaintiffs'

7

claims and with respect to the putative class members, plaintiffs sought only declaratory and injunctive relief.

Several months after plaintiffs filed their second amended complaint, in November 2010, the court certified the following class: "All persons and entities residing in the United States who, during the period from July 18, 2002 through the present . . . made a claim under a home-warranty plan obtained from defendant Fidelity . . . ." The court found the "case is ideally situated for class action treatment" based on numerous factors, including that "the focus of the litigation is on [Fidelity's] uniform, standardized practices" and that claims of "misrepresentations and false advertising via uniform written materials are routinely certified as class actions."

Fidelity petitioned for a writ of mandate in this court challenging the class certification order. We denied the petition, and the California Supreme Court denied Fidelity's petition for review.

Several months later, plaintiffs moved for a preliminary injunction. The court denied the motion on grounds that are not pertinent to the pleading issues before us.

*Motion for Judgment on the Pleadings*

In February 2011, Fidelity moved for judgment on the pleadings solely on the UCL and CLRA causes of action, arguing these claims "fail as a matter of law."

With respect to the CLRA claim, Fidelity argued that home warranty plans are a class of insurance, and thus are not governed by the CLRA, citing *Fairbanks v. Superior Court* (2009) 46 Cal.4th 56 (*Fairbanks*).

8

With respect to the UCL claim, Fidelity argued: (1) plaintiffs' claim seeks "redress for alleged violations of the [UIPA]"; (2) the California Supreme Court has held the UIPA does not give rise to a private cause of action (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304 (*Moradi-Shalal*); and (3) plaintiffs are not permitted to "plead around" the *Moradi-Shalal* bar by "artfully framing a UIPA claim as one under the UCL." Plaintiffs also relied on decisions holding that a plaintiff does not state a UCL claim if the alleged predicate acts are prohibited by the UIPA, even if the allegations also support a common law cause of action. (See *Textron Financial Corp. v. National Union Fire Ins. Co.* (2004) 118 Cal.App.4th 1061 (*Textron*); *Safeco Ins. Co. v. Superior Court* (1990) 216 Cal.App.3d 1491.)

In response, plaintiffs argued: (1) the CLRA claim was valid because Fidelity was providing services, not insurance; and (2) the UCL claim was valid because it was based not only on the UIPA violations, but also on breach of contract and breach of the implied covenant of good faith and fair dealing allegations.

At the hearing, plaintiffs' counsel urged the court not to follow the *Textron* line of cases, and argued that under existing law a UCL claim is valid if plaintiffs allege wrongful conduct *in addition to* the UIPA violations, even if the wrongful conduct can also be characterized as a UIPA violation. Plaintiffs' counsel also stated that plaintiffs could add a promissory fraud claim as a predicate act to their UCL claim *based on the evidence that has already been developed in the case.* The court responded that there may be a possibility that plaintiffs can allege facts in their UCL claim that are "outside the scope of UIPA, just even based on what they've already alleged." The court stated it

9

would give plaintiffs an opportunity to add allegations to supplement the UCL claim to include facts that are outside the UIPA context, to provide the court something "concrete" upon which to rule. The court noted that it had always understood that the case was about plaintiffs' claim that "the purchasers of these home warranties were promised something they never really got."

On November 1, 2011, the court issued a minute order stating that plaintiffs' CLRA claim "fails as a matter of law" and the UCL claim is barred "because the alleged predicate acts—unreasonable claims handling procedures and misleading advertisements—are prohibited by the UIPA. (*See* Ins. Code §§790.03(b), (h)(1), (3), (5))." On the UCL claim, the court relied on *Textron, supra*, 118 Cal.App.4th 161 and *Moradi-Shalal, supra*, 46 Cal.3d 287. The order concluded: "[T]he motion [for judgment on the pleadings] is granted with leave to amend based on Plaintiffs statements at oral argument regarding the potential for amendment."

Less than two weeks later, the court held an ex parte hearing at which both counsel appeared. At the conclusion of the hearing, the court issued a minute order stating: "Leave to amend was granted *only* as to UCL claim to allow plaintiffs to attempt to plead common law cause of action to avoid application of [UIPA]." (Italics added.)

*Fourth Amended Complaint*

About one month later, on December 7, 2011, plaintiffs filed their fourth amended complaint.[2]  Whereas the prior complaint was 15 pages and contained four causes of action, this new complaint was 52 pages and contained seven causes of action.  In the new complaint, plaintiffs sought to substantially enlarge the already-certified class.  Although the certified class consisted only of the individuals *who had made a claim on the Fidelity policies*, plaintiffs now identified the new class as consisting of "all persons and entities . . . who . . . *purchased or received* a [Fidelity] home warranty plan," even if the individuals had never made a claim.  (Italics added.)  Plaintiffs also identified a "Subclass," consisting of those individuals whose claim was denied by Fidelity.

With respect to the causes of action in the new complaint, plaintiffs deleted the CLRA claim, included the three causes of action contained in the second amended complaint (breach of contract, bad faith, and the UCL claim), and added several claims, including two fraud claims (fraud by concealment and promissory fraud) and a statutory false advertising claim (Bus. & Prof. Code, § 17500).  Plaintiffs also added numerous new facts underlying these claims, including detailed allegations describing the manner in which Fidelity engaged in false and misleading advertisements to induce consumers to purchase the policies.

---

2    A short time earlier, plaintiffs had filed a third amended complaint, but for reasons not relevant here, plaintiffs withdrew this pleading and instead filed a fourth amended complaint.

On the UCL claim, plaintiffs repeated their allegations that the claim was predicated on Fidelity's failure to comply with the written terms of the warranty plans (breach of contract) and Fidelity's conduct that constituted a breach of the implied covenant of good faith and fair dealing. Plaintiffs also identified several additional predicate acts, including false advertising in violation of Business and Professions Code section 17500, promissory fraud, fraud by concealment, and violation of section 332 (requiring full communication of relevant facts).

*Fidelity's Challenges to Fourth Amended Complaint*

Fidelity moved to dismiss or strike the amended complaint or portions of the amended complaint. Fidelity argued that the fourth amended complaint was "unauthorized and improper" because: (1) plaintiffs sought to "restart this litigation with new claims on behalf of a new and uncertified class and subclass after three and a half years of litigation"; (2) the court's prior order permitting plaintiffs leave to amend pertained only to the UCL claim; and (3) plaintiffs had never sought leave to amend to add a substantially new and different class and/or new and substantially different allegations.

At the hearing on the motion, plaintiffs' counsel said he believed the amendments were proper based on the court's statements at the hearing, but he also urged the court to permit him to file a corrected complaint that would strictly adhere to the definition of the already-certified class but would retain the new allegations regarding the UCL claim. Plaintiffs' counsel argued: "All along this case has been about the fact they promised one thing and they delivered something that was completely different. That's the basis for

12

these new claims, what we've alleged all along. It's just a different cause of action, but the facts and evidence we're going to use to prove those new causes of action have been at issue since day one." The court questioned how the UCL claim could be consistent with *Moradi-Shalal*, asking "what can you possibly plead that isn't subsumed by *Moradi-Shalal* in this case[?]" The court noted that if *Moradi-Shalal* "mean[s] anything," it means that a plaintiff cannot recast what is really an improper claims handling procedure as a UCL claim. The court also stated that "from what I've heard today, I'm not sure you could ever fix the [UCL claim]" in light of *Moradi-Shalal*.

After the hearing, the court granted Fidelity's motion to strike the fourth amended complaint and dismissed the entire action without permitting plaintiffs to file an amended complaint. The court explained its reasoning, in part:

> "[T]his Court granted Defendant's Motion for Judgment on the Pleadings and dismissed Plaintiff's [UCL] claim on the grounds that, in accordance with the doctrine expressed in *Moradi-Shalal* . . . , it could not be predicated on [UIPA]. . . . A November 9, 2011 order stated that Plaintiffs' leave to amend 'was granted *only* as to [the] UCL claim to allow plaintiffs to attempt to plead common law cause of action to avoid application of [UIPA].' (emphasis added).

> "In attempting to amend their complaint . . . Plaintiffs have expanded the class definition from including anyone who 'made a claim under a [Fidelity] home warranty plan . . . ' to now include anyone who 'purchased or received a [Fidelity] home warranty plan . . . .' In reliance on this new definition, Plaintiffs have then asserted new [claims] . . . on behalf of the [new proposed] class . . . .

> [¶] . . . [¶] . . .

> "Where a case has been in the system . . . for three and a half years and the Plaintiffs have expended both the court's and Defendant's resources to go through the certification process to recognize a relevant class and causes of actions, it should be presumed that if there were relevant, valid causes of

13

action, which could have been asserted on behalf of the certified class, that the Plaintiffs would have asserted them by now. That the Plaintiffs were left, at this late stage to alter the class definition in favor of a likely substantially larger class so as to assert the necessary common law causes of actions, necessitates the assumption that no valid causes of actions can be asserted on behalf of the certified class and that the action should be dismissed as to the relevant class. If the Plaintiffs wish to assert the causes of action on behalf of the new class of plaintiffs they should do so in a new class action suit or should have requested leave to amend the relevant class definition when such amendment was timely and not at the mercy of the Defendants Motion for Judgment on the Pleadings."

The court's minute order stated that the fourth amended complaint is "struck in its entirety and the CLRA claim is dismissed with prejudice, all other claims dismissed without prejudice."

Several weeks later, plaintiffs moved for relief under Code of Civil Procedure section 473, arguing that their counsel made a mistake in interpreting the scope of the trial court's order granting leave to amend. The court denied the motion, stating that "[c]ounsel has not demonstrated any actual mistake of fact or law," and instead showed only "a misunderstanding or misinterpretation of the scope of the ruling" permitting an amendment. The court also found plaintiffs waived their right to challenge the court's ruling as to their individual contract and bad faith claims.

On July 25, 2012, the court entered a final judgment in the matter. The judgment states in part: "[T]he Court issued its Minute Order . . . granting the motion to dismiss and the motion to strike. As a result, the demurrer was moot, and the Court's Order dismissed the entire action . . . . Plaintiffs' claim based on the [CLRA] was dismissed with prejudice, and the action was dismissed without prejudice."

14

APPEAL

I. *Order on Motion for Judgment on the Pleadings on Second Amended Complaint*

Plaintiffs contend the court erred in its November 1 order granting Fidelity's motion for judgment on the pleadings on the second amended complaint pertaining to: (1) plaintiffs' CLRA claim without leave to amend; and (2) plaintiffs' UCL claim with leave to amend.

A. *CLRA*

In their second amended complaint, plaintiffs alleged Fidelity's conduct violates the CLRA, which prohibits specific unfair and deceptive acts and practices in the "sale or lease of *goods or services* to any consumer." (Civ. Code, § 1770, italics added.) In challenging this claim, Fidelity contended its home warranty plans are not goods or services and instead are analogous to insurance plans, which are not covered under the CLRA. (See *Fairbanks, supra*, 46 Cal.4th at pp. 61-62.) The trial court agreed and dismissed the claim.

On appeal, plaintiffs contend the trial court erred because home warranty contracts are service contracts, not insurance, within the meaning of the CLRA.

The CLRA prohibits unfair or deceptive acts that "result[ ] in the sale or lease of goods or services to any consumer . . . ." (Civ. Code, § 1770.) The CLRA defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." (Civ. Code, § 1761, subd. (b).) The CLRA must "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive

15

business practices and to provide efficient and economical procedures to secure such protection." (Civ. Code, § 1760.)

In *Fairbanks,* the California Supreme Court interpreted these statutory provisions and held life insurance is not a " 'service[ ]' " under the unambiguous language of Civil Code section 1761, subdivision (b) because "[a]n insurer's contractual obligation to pay money under a life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible chattel." (*Fairbanks, supra*, 46 Cal.4th at 61.) The court found this plain meaning interpretation was supported by legislative history materials showing the Legislature made a deliberate decision to exclude insurance contracts from CLRA coverage. (*Id.* at pp. 61-62.) The court noted that the Legislature appears to have been "influenced by the existence of a separate legislative scheme," referring to the UIPA statutes (§ 790 et seq.). (*Fairbanks*, at p. 62.) Viewing the statutory language in context, the court concluded that although the act of providing insurance "may well be [viewed as] a service," this does not mean the Legislature intended to include insurance within the definition of "services" for purposes of the CLRA. (*Id.* at p. 63.)

A federal district court recently applied *Fairbanks* to conclude home warranty contracts are not covered by CLRA. (*Campion v. Old Republic Home Protection Company* (S.D.Cal. 2012) 861 F.Supp.2d 1139, 1144-1145.) *Campion* explained that the California Insurance Code specifically subjects home warranty plans to the state insurance regulatory scheme, including UIPA provisions. (*Id.* at p. 1145; see § 12740, subd. (a).) The *Campion* court also found that home warranty contracts have the essential

16

attributes of insurance as insurance is defined in California statutes and case law. (*Campion, supra*, at p. 1145.)

We agree with *Campion*'s reasoning and conclusion as applied to plaintiffs' allegations. Under the alleged facts, the Fidelity contract holder is required to pay for the plan even though no claim is filed, and Fidelity promises to pay for repairs and/or replacements *if* there are any covered defects or product failures during the contract period. This contract concerns a promise to indemnify against damage "arising from a contingent or unknown event," which is the definition of insurance under California law. (§ 22.) Consistent with this definition, California courts have recognized that the determination whether a contract is one of insurance depends on whether the "principal object and purpose of the transaction" involves the shifting of risk between the contracting parties and distributing the risk among similarly situated persons. (*Truta v. Avis Rent a Car System, Inc.* (1987) 193 Cal.App.3d 802, 814 (*Truta*); see 61 Ops.Cal. Atty.Gen. 214 (1978).) The principal object of Fidelity's coverage is to transfer the risk of the cost of defects in home-related systems and products and to spread the cost of repairing and servicing these items among all contract holders. "The home warranty plan provides for a transfer of risk that is not merely incidental, but rather is a central and relatively important element of the plans, and the relationship between [Fidelity] and its plan holders and their respective obligations are consistent with the concept of 'insurance,' as it is defined in the Insurance Code." (*Campion, supra*, 861 F.Supp.2d at p. 1146.)

17

Plaintiffs argue that Fidelity provided "services" under the CLRA because its warranty contracts repeatedly refer to repairs and service calls and represent that the contractors provide quality and efficient customer service. However, under these contract provisions, Fidelity's role is to dispatch an independent contractor after receiving a call from a contract holder. This obligation does not convert Fidelity into a service provider under the CLRA, nor does plaintiffs' argument affect our conclusion that the *primary* purpose and objective of the home warranty contracts is risk transference and risk distribution. As the *Campion* court stated, "Defendant's home warranty plans are not contracts for repair or replacement services . . . . Instead, the plans are designed to offer protection to home owners from *potential future losses*." (*Campion, supra*, 861 F.Supp.2d at pp. 1145-1146, italics added.)

Plaintiffs' reliance on *Truta, supra*, 193 Cal.App.3d 802 is misplaced. In *Truta,* the class plaintiffs challenged a provision in a standard car rental contract providing that for a fee, the rental company would agree to bear the cost of any damage to the vehicle. (*Id.* at p. 807.) Plaintiffs argued that this provision converted the transaction into one of insurance and thus the defendants were required to comply with insurance statutes. (*Id.* at pp. 807-808, 812.) Rejecting this argument, the *Truta* court reasoned that the "principal object and purpose of the transaction" and "the element which gives the transaction its distinctive character" was the rental of an automobile, and not this incidental benefit offered to consumers. (*Id.* at p. 814.)

18

Unlike in *Truta*, the transfer of risk involved in the home protection warranty plans is not merely incidental. " 'Instead, that risk transference is a central and relatively important element of the warranties.' " (*Campion, supra*, 861 F.Supp.2d at p. 1145.)

Plaintiffs rely on numerous additional state and federal decisions in an attempt to show that Fidelity home warranty plans offer services, and not insurance. We have reviewed these cases and find them inapposite. Additionally, plaintiffs' reliance on letters from home-warranty-provider trade associations is unhelpful. In these letters, third-party trade associations communicated with regulatory agencies in an effort to persuade the agencies that their members should not be treated as insurance providers. This position taken by a trade organization is not relevant to the legal question before us as to whether the main purpose of Fidelity's home warranty contracts is to provide risk sharing and risk distribution.

The court properly dismissed plaintiffs' CLRA claim.

### B. *UCL Claim*

Relying on *Zhang*, plaintiffs contend the court erred in granting Fidelity's motion for judgment on the pleadings on the UCL claim alleged in the second amended complaint. Fidelity responds with jurisdictional and substantive arguments. First, after briefing was complete and the *Zhang* decision was filed, Fidelity filed a motion asserting that we have no appellate jurisdiction to address this argument because plaintiffs filed a fourth amended complaint that superseded the second amended complaint. Second, Fidelity argued that even if we address the issue, we should find *Zhang* is inapplicable because it is legally and factually distinguishable.

19

As explained below, we conclude that well-settled procedural rules preclude us from reversing the judgment based on the merits of the UCL claim alleged in the second amended complaint because this claim has been superseded by the claim alleged in the fourth amended complaint. However, we determine it is appropriate for us to examine plaintiffs' contentions regarding the claimed error because the court's ruling impacted the court's later rulings leading to the final judgment.

### 1. *Superseded UCL Cause of Action*

A court's order granting or denying a motion for judgment on the pleadings that does not terminate the proceedings is interlocutory and thus is not appealable when it is entered. (*Singhania v. Uttarwar* (2006) 136 Cal.App.4th 416, 425; see *Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1212-1213.) However, the order is generally considered an "intermediate" order appealable from the final judgment. (*Singhania, supra*, 136 Cal.App.4th at p. 425; *Ellerbee*, at p. 1213; see Code Civ. Proc., § 906; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 128.) Under Code of Civil Procedure section 906, this court may review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party. . . ." (Code Civ. Proc., § 906; see *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 946-948 (*Cahill*).)

The court's ruling on the UCL claim as alleged in the second amended complaint involved the merits and led directly to the final judgment. The order was not substantively or procedurally collateral or unrelated to the judgment being appealed and "substantially affected" the party to the appeal. (Code Civ. Proc., § 906; see *Cahill,*

20

*supra*, 194 Cal.App.4th at p. 948.)  Thus, we have the appellate jurisdiction to review the order in connection with our review of the final judgment.

However, we agree with Fidelity that plaintiffs waived their right to challenge the sufficiency of the UCL claim as alleged in the second amended complaint *as a basis for overturning the judgment*.  It is well settled that when a plaintiff chooses to amend a cause of action after a motion for judgment on the pleadings is sustained with leave to amend, the party "waives to right to appeal any error therein."  (*Anmaco, Inc. v. Bohlken* (1993) 13 Cal.App.4th 891, 900.)  " '[W]hen a party does not leave his pleading where the order sustaining the demurrer [or granting the motion for judgment on the pleadings] has left it, he waives the error on the part of the trial court in sustaining the demurrer [or granting the motion for judgment on the pleadings].' "  (*Ibid.*; accord, *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966, fn. 2; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884; *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 311; *Singhania, supra*, 136 Cal.App.4th at p. 425; *Lee v. Bank of America* (1994) 27 Cal.App.4th 197, 215; *Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 866; *Metzenbaum v. Metzenbaum* (1948) 86 Cal.App.2d 750, 752; *Sheehy v. Roman Catholic Archbishop* (1942) 49 Cal.App.2d 537, 540-541.)

Plaintiffs raise numerous arguments in seeking to avoid this rule but we find none has merit.  Plaintiffs' strongest argument is that Fidelity waived this issue by failing to raise it until after the appellate briefing was complete and the California Supreme Court issued the *Zhang* decision that was clearly unhelpful to Fidelity's prior positions.  (See *Zhang, supra*, 57 Cal.4th 364.)  Before *Zhang*, Fidelity urged this court to reach the UCL

21

issue on the merits and decide the issue in its favor. After *Zhang*, Fidelity altered its position and argued that the issue was not properly before the court.

We agree with plaintiffs that Fidelity was tardy in raising the issue and that its motion to strike appears to have been filed in response to the California Supreme Court's *Zhang* decision. We also agree with plaintiffs that the issue is not jurisdictional. However, both parties had the full opportunity to brief the superseded-pleadings issue. Moreover, the rule that an amended complaint supersedes prior complaints and ceases to perform any function as a pleading with respect to the final judgment is strongly engrained in our judicial system. Recognizing the importance of this rule to promote policies of finality and judicial efficiency, we find no principled basis to make an exception in this case with respect to the UCL claim.[3]

We thus conclude the propriety of the court's ruling on the second amended complaint regarding the UCL claim cannot serve as a basis to reverse the judgment. However, this does not preclude us from evaluating the allegations in the second amended complaint to the extent they are relevant to the court's later rulings that *are* properly before us. In this case, the allegations in the second amended complaint are relevant to the issue whether the court properly refused to permit a correction or amendment of the fourth amended complaint, particularly in light of the California Supreme Court's recent clarification of the law. We address the issue regarding the

---

[3]     We agree with the parties that this rule has no applicability to the CLRA claim because plaintiffs chose not to amend their complaint on this cause of action. (See *National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.* (2009) 171 Cal.App.4th 35, 44.)

sufficiency of the UCL allegations in the second amended complaint solely for this purpose.

## 2. *Applicable Law Pertaining to UCL Claim*

The UCL prohibits unlawful, unfair, and fraudulent business practices. (Bus. & Prof. Code, § 17200.) The UIPA identifies numerous prohibited unfair practices by insurers, including various unfair claims settlement practices contained in section 790.03, subdivision (h) (§ 790.03(h)). In *Moradi-Shalal*, the California Supreme Court held the Legislature did not intend to create a private cause of action for violations of section 790.03(h). (*Moradi-Shalal, supra*, 46 Cal.3d at p. 304.) Following *Moradi-Shalal*, the courts reached differing conclusion regarding the viability of UCL claims based on insurer conduct covered by section 790.03, including section 790.03(h).

In *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093 (*State Farm*), the court held *Moradi-Shalal* did not bar a UCL claim for injunctive or restitutive relief based on common law fraud or bad faith theories, even though "such alleged acts might also violate [UIPA] provisions." (*State Farm*, at pp. 1098-1099.) The court reasoned that since the other two prongs under the UCL, forbidding unfair or deceptive acts, provide independent bases for relief, the causes of action could proceed because they met the definition of an unfair or deceptive business act or practice. (*Id.* at pp. 1104-1105.) The *State Farm* court also stated that UIPA was not intended to preclude common law or other statutory claims and *Moradi-Shalal* expressly held that courts retained jurisdiction to impose " '*other remedies* against insurers in appropriate common law actions.' " (*State Farm*, at p. 1108.)

23

The *Textron* court disagreed with *State Farm* and concluded that "parties cannot plead around *Moradi-Shalal*'s holding by merely relabeling their cause of action as one for unfair competition." (*Textron, supra*, 118 Cal.App.4th at p. 1070.) The *Textron* court held that where an insured's UCL cause of action is based on common law claims amounting to "the type of activities covered by the UIPA," it is barred by *Moradi-Shalal*. (*Textron*, at p. 1070; see also *Safeco Ins. Co. v. Superior Court, supra*, 216 Cal.App.3d at p. 1494.)

In *Zhang*, the California Supreme Court disapproved of *Textron*'s holding and analysis. (*Zhang, supra*, 57 Cal.4th at p. 382.) The court held that "*Moradi-Shalal* does not preclude first party UCL actions based on grounds independent from section 790.03, *even when the insurer's conduct also violates section 790.03*." (*Id.* at p. 369.) The court explained that *Moradi-Shalal* "left intact . . . traditional common law theories of private recovery against insurers[,] . . . includ[ing] 'fraud, infliction of emotional distress and (as to the insured) either breach of contract or breach of the implied covenant of good faith and fair dealing.' " (*Zhang,* at p. 373.) The *Zhang* court stated that "We have made it clear that while a plaintiff may not use the UCL to 'plead around' an *absolute* bar to relief, the UIPA does not immunize insurers from UCL liability for conduct that violates other laws in addition to the UIPA. [Citations.] [¶] Here, plaintiff alleges causes of action for false advertising *and* insurance bad faith, *both* of which provide grounds for a UCL claim independent from the UIPA. Allowing [the plaintiff] to sue under the UCL does no harm to the rule established in *Moradi-Shalal*. The *Moradi-Shalal* court made it plain that while violations of section 790.03(h) are themselves not actionable, insureds retain other

24

causes of action against insurers, *including common law bad faith claims.* Furthermore, UCL actions by private parties are equitable proceedings, with limited remedies. They are thus quite distinct from the claims for damages with which *Moradi-Shalal* was concerned." (*Zhang, supra*, 57 Cal.4th at p. 369, some italics added.)

*Zhang* was a first-party action in which the plaintiff sued her insurer for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the UCL. (*Zhang, supra*, 57 Cal.4th at p. 369.) The trial court agreed with the insurer that the UCL claim was an impermissible attempt to plead around *Moradi-Shalal*'s bar against private actions for unfair insurance practices under section 790.03. (*Zhang, supra*, 57 Cal.4th at p. 370.) The California Supreme Court reversed, holding that the plaintiff's UCL claim was actionable based on the "common law of insurance bad faith" and the defendant insurer was not "protected from UCL liability simply because its claims handling practices may be prohibited by section 790.03." (*Zhang, supra*, 57 Cal.4th at pp. 379-380.) The court specifically noted that "bad faith insurance practices may qualify as any of the three statutory forms of unfair competition. [Citation.] They are *unlawful*; the insurer's obligation to act fairly and in good faith to meet its contractual responsibilities is imposed by the common law, as well as by statute. [Citations.] They are *unfair* to the insured; unfairness lies at the heart of a bad faith cause of action. [Citations.] They may also qualify as *fraudulent* business practices." (*Id.* at p. 380.) Although the *Zhang* court declined to reach the issue of the precise standard for determining what business acts or practices are "unfair" in consumer actions under the

UCL, it upheld "the *State Farm* court's ruling that common law bad faith claims provide a viable basis for a UCL action." (*Id.* at p. 381.)

### 3. *Analysis*

As in *Zhang*, in the second amended complaint (and in the fourth amended complaint), plaintiffs based their UCL claim, in part, on allegations that Fidelity's conduct "constitutes a violation of the implied covenant of good faith and fair dealing." Plaintiffs alleged that Fidelity violated its implied promise to "refrain from doing anything to injure the right of Plaintiffs and the Class to receive the benefits under the contracts." Plaintiffs also incorporated by reference all other factual allegations in the complaint, which included allegations that (1) Fidelity misrepresented it "would cover the cost of covered items under the home warranty plan, when in fact [Fidelity] created economic incentives for third-party contractors to deny claims completely or to shift the majority of the costs for repair or replacement work to the consumer," and (2) when selling the plans to plaintiffs, Fidelity represented that the home warranty plans "had sponsorship, approval, characteristics, ingredients, uses, and benefits which they [did] not have" and misrepresented that Fidelity itself "would perform the tasks relat[ing] to determining whether a submitted claim was valid."

Under the law now clarified by the *Zhang* court, the trial court erred in concluding these allegations are barred merely because they also encompass alleged violations of the UIPA. The Ninth Circuit recently reached an identical conclusion in a case similar to here where the plaintiff brought common law and statutory claims against his home warranty company. (*Diaz v. First American Home Buyers Protection Corp.* (9th Cir. Oct.

26

4, 2013) 2013 WL 5496762.)  In an unpublished opinion, the *Diaz* court stated:  "In light of *Zhang* . . . , Diaz adequately alleged violations of [the UCL] because her claims are premised on fraud, breach of contract and breach of the implied covenant of good faith and fair dealing, even if First American's alleged conduct also may have violated the [UIPA]."  (*Id.* at p. *2.)

Fidelity suggests that *Zhang* does not apply in this case because the *Zhang* court held only that a false advertising claim can support a UCL cause of action and did not hold that a bad faith claim is a sufficient predicate act to state a UCL claim.  Fidelity misreads the *Zhang* decision.  As discussed above, *Zhang* recognized that insurance bad faith allegations can be a sufficient predicate to plead a valid UCL cause of action. (*Zhang, supra*, 57 Cal.4th at pp. 380, 383.)

We reject Fidelity's additional argument that *Zhang*'s holding applies only to individual (not class) claims.  Although *Zhang* was an individual action, the *Zhang* court did not state or suggest that its holding is limited to nonclass claims.  The *Zhang* court noted only that *if* the plaintiff wanted "to attempt to recover on behalf of other insureds, she would be required to certify a class action."  (*Zhang, supra*, 57 Cal.4th at p. 383.) The court stressed that it was "not concerned at the pleading stage as to how [the plaintiff] might go about proving her claim" and "the possible difficulty of proving the plaintiff's allegations is not a relevant consideration on review of a demurrer ruling." (*Ibid.*)

In sum, the trial court erred in granting Fidelity's motion for judgment on the pleadings (with leave to amend) with respect to the UCL claim alleged in the second

27

amended complaint.  However, as discussed above, plaintiffs waived this error by filing a new complaint (the fourth amended complaint) that modified and supplemented the allegations supporting the UCL claim.  We thus now turn to the issue whether the court properly granted a motion to strike on the fourth amended complaint and/or refused to permit plaintiffs the opportunity to correct and/or amend their fourth amended complaint.

## II.  *Fourth Amended Complaint*

### A.  *Striking the Fourth Amended Complaint*

Plaintiffs contend the court erred in granting Fidelity's motion to strike their fourth amended complaint.

Code of Civil Procedure section 436 states:  "The court may . . . upon terms it deems proper:  [¶] . . . [¶] . . . [s]trike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court."  A court has broad discretion in ruling on a motion to strike under this code section.  (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 613; *Pacific Gas & Electric Co. v. Superior Court* (2006) 144 Cal.App.4th 19, 23.)  If the order is within the bounds of reason it must be upheld.  (See *Cahill, supra*, 194 Cal.App.4th at p. 957.)

The trial court granted Fidelity's motion to strike because it was not filed in conformity with the court's earlier order providing leave to amend.  The court's conclusion was supported by the record.  Although the court initially stated plaintiffs were provided leave to amend based on plaintiffs' counsel's "statements at oral argument," one week later the court issued a new minute order clarifying that:  "Leave to

amend was granted *only* as to UCL claim to allow plaintiffs to attempt to plead common law cause of action to avoid application of [UIPA]." (Italics added.)

Despite this explicit order, in their fourth amended complaint plaintiffs filed an entirely different action with a greatly expanded plaintiff class. Whereas the prior complaint was 15 pages and contained four causes of action, this new complaint was 52 pages and contained seven causes of action. Although the certified class consisted only of the individuals *who had made a claim on the Fidelity policies*, plaintiffs now identified the new class as "consisting of all persons and entities who *purchased or received* a [Fidelity] home warranty plan," even if they had never made a claim. (Italics added.) According to Fidelity, this new proposed class potentially included "one or several million plaintiffs," whereas the existing class was approximately 800,000 members.

With respect to the causes of action in the fourth amended complaint, plaintiffs added two common law fraud claims and a statutory false advertising claim (Bus. & Prof. Code, § 17500). Plaintiffs also added detailed new allegations describing the manner in which Fidelity engaged in false and misleading advertisements to induce consumers to purchase the policies. On the bad faith claims, plaintiffs greatly expanded the discussion of the alleged facts.

On the UCL claim, plaintiffs repeated their allegations that the claim was predicated on defendants' failure to comply with the written terms of the warranty plans (breach of contract) and on Fidelity's conduct that constituted a breach of the implied covenant of good faith and fair dealing. Plaintiffs also added several additional predicate

29

acts, including false advertising in violation of Business and Professions Code section 17500, promissory fraud, fraud by concealment, and violation of section 332.

This amended complaint violated the court's order permitting a limited amendment only with respect to the UCL claim. Although a class had been certified one year earlier, plaintiffs added allegations that greatly expanded the class, without seeking permission to do so. The court had ample reason to conclude this amendment would substantially prejudice Fidelity's rights because Fidelity had conducted discovery and other pretrial litigation based on the prior class definition and the trial was scheduled to begin in less than four months. The court did not abuse its discretion in striking the amended complaint.

### B. *Refusing To Grant Leave To Amend*

Our conclusion that the court properly granted Fidelity's motion to strike the fourth amended complaint does not answer the question whether the court properly exercised its discretion to deny plaintiffs leave to amend in conformity with the court's prior orders.

"Section 452 mandates that a pleading is to be liberally construed for purposes of determining its effect, 'with a view to substantial justice between the parties.' Where the defect raised by a motion to strike . . . is reasonably capable of cure, 'leave to amend is routinely and liberally granted to give the plaintiff a chance to cure the defect in question.' . . . It is generally an abuse of discretion to deny leave to amend, because the drastic step of denial of the opportunity to correct the curable defect effectively terminates the pleader's action." (*CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1146-1147.) "When the defect which justifies striking a

30

complaint is capable of cure, the court should allow leave to amend." (*Vaccaro v. Kaiman* (1998) 63 Cal.App.4th 761, 768.)

Plaintiffs' counsel requested leave to file an amended complaint deleting the improper new class allegations and strictly complying with the court's order that the amendments pertain only to the UCL claim regarding the perceived *Moradi-Shalal* problem. As discussed in section I.B. above, this amendment would have withstood Fidelity's pleading challenge (at least based on *Moradi-Shalal*) and the amendment likely would have cured the identified pleading defect.

A court abuses its discretion if its determination is based on an incorrect legal standard or misapprehension of the governing law. (See *People v. Knoller* (2007) 41 Cal.4th 139, 156; *Ibarra v. Superior Court* (2013) 217 Cal.App.4th 695, 700.) The record makes clear that in refusing to permit an amendment, the trial court was viewing the case through the lens of pre-*Zhang* law regarding the viability of a UCL claim. In responding to plaintiffs' request that it be permitted to file a fifth amended complaint, the court stated it did not believe plaintiffs would be entitled to "plead around" the *Moradi-Shalal* bar and thus could not state a valid UCL claim. Having the benefit of *Zhang*'s clarification, we are satisfied there is a strong likelihood plaintiffs could have amended their complaint to avoid a dismissal of the entire action. By dismissing the action without permitting an amendment, the court denied plaintiffs the opportunity to correct a pleading defect that was easily correctable and to have this court review the new pleading on its merits.

Additionally, in opposing the amendment, Fidelity did not identify how it would have been prejudiced by allowing an amended pleading compliant with the court's order, and the appellate record does not support a prejudice finding. In ruling on the second amended complaint, the court had previously decided to permit an amendment of the UCL claim, and the court could have required the corrected amended complaint to be filed within days of the court's order striking the improper allegations. The court stated that plaintiffs could protect their rights by filing an entirely new action, but it is unclear whether the court considered the possibility that existing class members could be barred by limitations defenses in a new action. Moreover, the plaintiffs had already spent substantial funds (approximately $166,000) notifying the class of the action and allowing class members to opt out.

Further, to the extent the court found plaintiffs intentionally disregarded its earlier orders or otherwise acted in bad faith, the appropriate response was to impose sanctions under the sanctions statutes (see Code Civ. Proc., § 128.7), and not to terminate the entire action without providing leave to amend—particularly where it appeared the limited amendment would have merit and would not have prejudiced the other side.[4]

---

[4] In this regard, Fidelity requests we take judicial notice of an amended class action complaint filed in San Joaquin County by plaintiffs' counsel on behalf of different named plaintiffs alleging similar allegations against Fidelity. This pleading, filed more than one year *after* the trial court entered judgment in the case before us, is not relevant to our review of the trial court's refusal to permit an amendment. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [appellate review is generally limited to record before the court when judgment entered].)

CROSS-APPEAL

In a cross-appeal, Fidelity contends the court erred in its November 1, 2010 order certifying the class. An order certifying a class is an interlocutory order and is appealable after the final judgment. (*Estrada v. RPS, Inc.* (2005) 125 Cal.App.4th 976, 986; *Shelley v. City of Los Angeles* (1995) 36 Cal.App.4th 692, 696.) Because we have reversed the final judgment, the class certification order is not properly before us. An order certifying a class is subject to modification at any time, and thus it would not be appropriate to review the order at this time. (See *Estrada, supra*, 125 Cal.App.4th at p. 986.) In this regard, we decline Fidelity's invitation to mandate that the court reconsider the class certification decision or to offer advice to the trial court on the issue. If Fidelity believes there is a valid basis to request the court to reconsider its decision, it may file a motion with the court on remand.

## DISPOSITION

We affirm in part and reverse in part.  We affirm the court's orders:  (1) granting the motion for judgment on the pleadings on the CLRA claim and dismissing that claim with prejudice from the action; and (2) striking the fourth amended complaint.  We reverse the judgment dismissing the entire action.  The court shall vacate the final judgment and issue a new order permitting plaintiffs to amend or correct the fourth amended complaint in compliance with the court's prior orders and any new orders that are consistent with the views expressed in this opinion.  The parties to bear their own costs on appeal.

HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.